MICHAEL RUBIN (SBN 80618)
EVE CERVANTEZ (SBN 164709)
P. CASEY PITTS (SBN 262463)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: mrubin@altber.com
        ecervantez@altber.com
        cpitts@altber.com

ABBAS KAZEROUNIAN (SBN 249203)
Kazerouni Law Group, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
E-mail: ak@kazlg.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAIL MEDEIROS, et al.,<br>    Plaintiffs,<br><br>    v.<br><br>HSBC CARD SERVICES INC., et al.,<br>    Defendants. | Case No. 2:15-cv-09093 JVS (AFMx)<br><br>Case No. 12-CV-00885-JVS-RNB<br><br>Relates to: *Medeiros*, *Fanning*, and *Lindgren* |
| TERRY FANNING, et al.,<br>    Plaintiffs<br>    v.<br><br>HSBC CARD SERVICES INC., et al.,<br>    Defendants. | **DECLARATION OF MICHAEL RUBIN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      Oct. 17, 2016<br>Time:     1:30 p.m.<br>Place:    Santa Ana, 10C<br>Judge:    Hon. James V. Selna |
| STEFAN O. LINDGREN,<br>    Plaintiff,<br>    vs.<br><br>HSBC CARD & RETAIL SERVICES, INC., et al.,<br>    Defendants. | |

I, Michael Rubin, declare as follows:

1.   I am a partner at Altshuler Berzon LLP, one of the law firms serving as counsel of record for plaintiffs Terry J. Fanning, Tatiana Jabbar, Stefan O. Lindgren, and the prospective class in *Fanning et al. v. HSBC Card Services Inc. et al.* (C.D. Cal. Case No. 12-cv-00885 JVS (RNBx)) ("*Fanning*"), and *Lindgren v. HSBC Card Services Inc. et al.* (C.D. Cal. Case No. 14-cv-05615 JVS (RNBx)) ("*Lindgren*") (together the "*Fanning/Lindgren* cases") against Defendants HSBC Card Services, Inc. and HSBC Technology & Services USA Inc. (collectively "HSBC").  I am also counsel of record for Terry J. Fanning and Stefan O. Lindgren as Intervenors in *Gail Medeiros et al. v. HSBC Card Services Inc., et al.* (C.D. Cal. Case No. 2:15-cv-09093-JVS-AFM) ("*Medeiros*").

2.  I am a member in good standing of the State Bar of California and am admitted to practice before this Court.

3.  I have been counsel in the *Fanning/Lindgren* cases since July 2014, shortly after the filing of *Lindgren*.  Since then, I have been actively involved in the prosecution and settlement of plaintiffs' claims on behalf of the putative class.

4.  Before joining this litigation, I personally conducted an extensive investigation into the claims asserted in *Fanning* and *Lindgren*.  I am familiar with the proceedings, discovery, and court pleadings and orders in the *Fanning* matter prior to consolidation with the *Lindgren* matter, based on my review of the applicable documents and transcripts.  Unless otherwise expressly stated herein as being upon information and belief, the statements I make in this declaration are made based on my personal knowledge, and if called to do so, I could competently testify to them.

5.  I make this declaration in support of plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  That motion seeks to resolve not only the *Fanning/Lindgren* cases but also *Medeiros et al., v. HSBC Card Services Inc. et al.*, originally filed in the United States District Court for the Southern District of

California, Case No. 14-cv-01786-JLS-MDD, and transferred to the United States District Court for the Central District of California, Case No. 2:15-cv-9093-JVS-AFM ("*Medeiros*").  By this Court's order dated July 27, 2016, the *Fanning/Lindgren* and *Medeiros* cases have been consolidated for purposes of this settlement.

6.  The purpose of this declaration is to provide information supporting my opinion as to the adequacy of the settlement, including some background of the litigation, a summary of the factual investigation and prosecution of the claims, the negotiations that led to the settlement and the results achieved on behalf of the Settlement Class.  The Settlement Class is defined as all persons in California who received a telephone call during the Class Period (March 23, 2009 through May 1, 2012) from or on behalf of defendant HSBC Card Services Inc. and whose call was recorded or monitored by or on behalf of HSBC.

## Counsel's Background and Experience

7.  I graduated in 1977 from the Georgetown University Law Center and clerked for Judge Charles B. Renfrew of the U.S. District Court for the Northern District of California (1978-79), Chief Judge James R. Browning of the U.S. Court of Appeals for the Ninth Circuit (1979-80), and Associate Justice William J. Brennan, Jr. of the U.S. Supreme Court (1980-81).  For many years I have specialized in complex civil litigation, class actions, and appeals.

8.  I have been awarded five "California Lawyer Attorney of the Year" awards by *California Lawyer* magazine: winning three times in the Employment Law Category (in 2016 for my trial and appellate work in the Walmart warehouse worker's joint-employer class action litigation; in 2013 for my appellate work in *Brinker v. Superior Court* in the California Supreme Court; and in 2002 for my trial work in the Saipan sweatshop litigation), once for False Claims Act Litigation (in 2010 for my work leading to the $78 million settlement of government fraud claims against the for-profit University of Phoenix), and once for Criminal Law (also in

2010 for more than a quarter century of work on behalf of a condemned inmate that resulted in my client's unconditional release from prison in 2010 – a case that also resulted in my receiving the "Johnnie Cochran" award from the L.A. Criminal Courts Bar Association).  I am also a 2003 recipient of a "Trial Lawyer of the Year" Award from the Trial Lawyers for Public Justice for my work on the Saipan litigation and was American Lawyer magazine's "Litigator of the Week" in mid-May 2013 for my work on behalf of five professional sports unions in the *Hart v. Electronic Arts* right-of-publicity case in the Third Circuit.  I have been listed for many years in "The Best Lawyers in America" under labor and employment and appellate law, and San Francisco magazine currently lists me among its Northern California "Super Lawyers" in the areas of appellate practice, class actions, and labor and employment litigation.  In 2012, 2013, 2015, and 2016, the *Daily Journal* named me one of the 75 top Labor and Employment Lawyers in California.  I am also an elected member of the College of Labor and Employment Lawyers, and a former member of the Board of Directors of the AFL-CIO's Lawyers Coordinating Committee.

9.  Of particular relevance here, I have litigated numerous consumer class action lawsuits, with a particular focus on protecting consumers' privacy. Representative cases include: *Hamilton v. Great Expectations Creative Management, Inc*., Contra Costa County Superior Ct. No. C90-01079 (part of Contra Costa Coordination No. 2647, along with *Hamilton v. Ross/Treiger*, San Bernardino County Superior Ct. No. RCV060692); *Nobles v. MBNA Corporation*, N.D. Cal. No. C-06-3723 CRB; *Utility Consumers Action Network v. Bank of America, N.A.*, San Francisco Superior Court No. SACV 00-0726 GLT(ANx) *(part of Consumer Privacy Cases*, San Francisco Superior Court Judicial Council Coordination Proceeding No. 4211); *Utility Consumers Action Network v. Capitol One Financial Corp*., San Francisco Superior Court No. SACV 00-0726 GLT(ANx) (part of *Capitol One Cases*, San Francisco Superior Court Judicial Council Coordination Proceeding No.

4191); *Utility Consumers Action Network v. Sears, Roebuck and Co*., San Francisco Superior Court No. 306232 (part of *Capitol One Cases*, San Francisco Superior Court Judicial Council Coordination Proceeding No. 4191); *Van Zant v. Apple, Inc*., Santa Clara County Superior Court No. 1-10-CV-177571, 6th App. Dist. No. H039354, 229 Cal.App.4th 965 (2014); and *Beaver v. Tarsadia Hotels*, S.D. Cal. No. 11-cv-01842-GPC-KSC, 9th Cir. No. 15-55106, U.S. Supreme Ct. No. 15-1483.

### Fairness of Proposed Settlement

10.  A true and correct copy of the signed Settlement Agreement between plaintiffs and defendants HSBC Card Services Inc. and HSBC Technology & Services (USA) Inc. ("Settlement" or "SA") along with the attached exhibits is attached as **Exhibit A** to this declaration.

11.  Based on my personal review of the facts of the consolidated actions and the applicable legal standards, the work performed during the course of the litigation (described in ¶¶19-28 below), and my experience litigating complex class action disputes (described in ¶¶7-9 above), it is my professional opinion that the settlement reached here between the parties is fair, adequate, and in the best interests of class members, particularly given the risk factors that are discussed in the accompanying motion for preliminary approval.

12.  As detailed below, the *Fanning/Lindgren* plaintiffs propounded several sets of written discovery (interrogatories, documents requests, requests for admissions); took numerous depositions; served subpoenas and received discovery from third party and subsequent defendant Capital One Financial Corporation ("Capital One"); reviewed thousands of pages of documents, including electronic data, produced by HSBC as well as Capital One; and reviewed and analyzed both directly as well as through third-party data analysis firms, including AB Data, LTD (hereinafter "AB Data"), HSBC credit card account holder information, auto dialer reports, monitoring reports, and the recordings and records of recordings of calls to

DECLARATION OF MICHAEL RUBIN ISO PRELIMINARY APPROVAL OF SETTLEMENT
CASE NOS. 2:15-cv-09093 JVS (AFMx), 12-CV-00885-JVS-RNB

HSBC California credit card account holders received from HSBC and/or Capital One.

13.  I believe that there are sufficient grounds to certify the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes.  I understand, based on the records produced by HSBC and/or Capital One in the *Fanning* Action as analyzed by AB Data, that the class consists of (a) almost 60,000 individuals with respect to whom the records identify the HSBC California credit card account holders' telephone number(s) in the records of full-time recordings; (b) over one million individuals whose telephone number(s) appear in the auto dialer logs and whose call records contain a result code that indicates that an actual telephone conversation took place (based on the result code keys provided by Capital One), meaning that they *may* have been recorded; and (c) tens of thousands of additional California credit card account holders as to whom there is some indication that a telephone call may have been recorded.  The numerosity requirement is easily satisfied.  The predominating common issues of fact and law are whether those telephone calls to credit card account holders are "confidential communications" within the meaning of the California Penal Code and whether HSBC obtained legally adequate consent from its California credit card account holders sufficient to allow it to record these telephone calls.

14.  It is my understanding that the evidence obtained in the *Fanning* litigation establishes that HSBC had standard procedures with respect to the handling and recording of outbound telephone calls to its credit card account holders.  HSBC relied on the call-recording advisory set forth in the written card member agreement between credit card account holders and HSBC Bank Nevada, and did not have a policy for providing verbal advisories that would give notice to account holders that HSBC would record their calls.  The Civil Minutes from the December 19, 2012 discovery conference before Magistrate Judge Block in *Fanning* state HSBC's binding on-the-record stipulation that no verbal advisory about the call recordings

was provided in outbound calls because HSBC was relying on the alleged disclosure in the underlying written card agreements.  In these cases, the question of damages also raises a common issue because plaintiffs limited the relief requested to the statutory damages amount ($5,000 per call) rather than any actual damages incurred. For these reasons, in my view the common factual and legal issues predominate over any possible individual issues.

15.  Plaintiffs' claims are typical because the named plaintiffs, like all the other class members, allege that their telephone calls with HSBC were "confidential communications" (although California law does not impose that requirement with respect to cell phone calls) and were recorded by defendants without the account holders' consent.  Plaintiffs are also adequate class representatives because they are not subject to any unique defense, have no conflicts with the class, and have retained experienced counsel.  Further, the individual plaintiffs actively participated in the prosecution of this action.  Plaintiff Lindgren, for example, produced documents, responded to interrogatories, and provided deposition testimony.  Plaintiff Fanning submitted a declaration in support of a 2014 motion for partial summary judgment. Finally, I believe that a class action is superior to any alternative methods for resolving the substantive claims at issue, as it would be impractical and inefficient for the claims of class members to be adjudicated in thousands of individual actions rather than in a single class action.

16.  The proposed settlement was the result of extensive multi-day mediation efforts over several months overseen by former Magistrate Judge Edward A. Infante at JAMS, San Francisco, California. The Settlement is the result of a mediator's proposal, which all parties accepted. At all times, the negotiations were adversarial, non-collusive, and conducted at arm's-length.

17.  The Settlement provides the class members a non-reversionary recovery of $13,000,000 (thirteen million dollars).  As detailed below, we designed the plan of allocation, notice, and claims administration process to minimize the burden on

DECLARATION OF MICHAEL RUBIN ISO PRELIMINARY APPROVAL OF SETTLEMENT
CASE NOS. 2:15-cv-09093 JVS (AFMx), 12-CV-00885-JVS-RNB

putative class members while maximizing recovery for those class members whose records indicate that they were in fact recorded (recognizing that many individuals *may* have been recorded, given HSBC's recording protocols, but that concrete evidence of actual recordings only exists with respect to a minority of class members). The settlement amount compares favorably to the amount that class members could hope to achieve at trial, taking into account the many risks that exist in this case, including being unable to obtain class certification or losing on the merits after trial. The risk is particularly significant in cases involving statutory damages, such as this one, where although there are some records of recordings, and some means of correlating those records with specific class members, absent burden-shifting there is no clear way to establish with respect to the majority of class members whether they were actually recorded, when or how often they may have been recorded, and what the nature of the recorded communications may have been. Additionally, plaintiffs face the risk of defendants raising due process and other constitutional arguments relating to the imposition of $5,000 per call statutory damages under the California Penal Code.

18. I believe we accomplished an excellent result in the proposed settlement, particularly because it would not have been economically feasible for the class members to pursue these claims individually, as the cost of litigating these claims individually would have eclipsed any potential individual recovery.

### Status of Litigation and Discovery

19. On June 4, 2012, plaintiffs Terry Fanning and Tatiana Jabbar filed the first class action complaint in this consolidated litigation in the U.S. District Court for the Central District of California. The *Fanning* case asserted claims on behalf of California HSBC credit card account holders, alleging that HSBC electronically recorded their telephone conversations without consent in violation of California's Invasion of Privacy Act, Cal. Penal Code §630 *et seq.* HSBC answered the *Fanning* complaint on July 20, 2012.

20.  The *Fanning* plaintiffs promptly commenced substantive written discovery with respect to liability and class certification.  In late 2012, Plaintiffs served notices of deposition and subsequently took several depositions of HSBC employees.  Commencing in December 2012 and ending February 2015, Magistrate Judge Robert N. Block held fourteen (14) discovery conferences, requiring the attendance of counsel as well as information technology experts from plaintiffs and HSBC.  During these conferences, Judge Block set protocols for the exchange of information between the parties and Capital One, a non-party in the *Fanning* action, which had possession of HSBC's accounts and recording data as a result of its May 1, 2012 acquisition of assets of HSBC Card Services, Inc. (among other HSBC corporate entities).  Judge Block issued Minute Orders for each of the discovery conferences.  Some of the significant rulings by Judge Block include: (a) acknowledging and accepting HSBC's stipulation that "none of those recorded conversations would have included a warning that the call might be recorded" (December 19, 2012 discovery conference); (b) setting March 23, 2009 to May 1, 2012 as the relevant time period (when the HSBC Card Services, Inc. credit card accounts were sold to Capital One pursuant to the Purchase and Assumption Agreement dated August 10, 2011) (December 19, 2012 discovery conference); (c) stating that only recordings of conversations between representatives of HSBC Card Services, Inc. and putative class members during that time period were relevant (December 19, 2012 discovery conference); (d) allowing plaintiffs to serve a Fed. Rule Civ. Proc. Rule 45 subpoena on Capital One seeking three categories of data that had been transferred to Capital One (August 15, 2013 discovery conference); and (e) allowing Plaintiffs to obtain HSBC's auto dialer logs of calls and samples of monitoring reports reflecting actual recorded conversations (December 22, 2014 discovery conference).

21.  As the result of the discovery conferences with Judge Block and the Rule 45 subpoenas served on Capital One, the *Fanning* plaintiffs were able to obtain

millions of HSBC's records of call recordings and data on over half a million former California HSBC account holders.  The extensive, time-consuming and rigorous analysis performed by the IT experts retained by the *Fanning/Lindgren* plaintiffs to analyze the data, coupled with counsel's own analysis, allowed us to match millions of records of nationwide telephone recordings with the California account holder data by, for example, matching certain fields (e.g., telephone numbers) in what has been referred to as "Category 1" data (records of recordings) with "Category 2" data (California account holder information), which resulted in our identification of approximately 100,473 records of recordings for 58,448 unique California account holders.  As described below, these individuals comprise the "Direct Payment" subclass.  "Category 3" of the subpoena (as listed in Judge Block's August 12, 2013 order) allowed the *Fanning* plaintiffs to obtain from Capital One a sampling of 300 actual recordings, one of which was a recording of a telephone conversation between HSBC Card Services and plaintiff Stefan Lindgren.  In December 2014, Judge Block also allowed plaintiffs to serve a second subpoena on Capital One, by which plaintiffs received auto dialer logs documenting additional outbound calls by HSBC, as well as result codes indicating which of those calls resulted in an actual telephone conversation.

22.  Plaintiff Lindgren filed a motion to intervene into the *Fanning* lawsuit on October 7, 2013, shortly after learning that he had been recorded by HSBC.  HSBC opposed intervention on the grounds that plaintiffs in the *Fanning* case lacked Article III standing.  After further briefing on the standing issue, on November 19, 2013, the Court dismissed Lindgren's motion to intervene without prejudice, pending resubmission after the standing of the representative plaintiffs in *Fanning* was determined.  ECF No. 199.

23.  A review of the court documents in *Fanning* indicates that there were a number of key, substantive factual and legal issues presented to the Court during the pendency of the *Fanning* litigation.  On May 6, 2013, the Court denied HSBC's

DECLARATION OF MICHAEL RUBIN ISO PRELIMINARY APPROVAL OF SETTLEMENT
CASE NOS. 2:15-cv-09093 JVS (AFMx), 12-CV-00885-JVS-RNB

motion for summary judgment, finding a material issue of disputed fact existed as to whether the privacy provision in HSBC Bank Nevada's card-member agreements provided adequate notice to putative class members that their calls would be recorded by HSBC.  ECF No. 119.  The Court also found that California's Invasion of Privacy Act, Cal. Penal Code §630 *et seq.*, was not preempted by the National Banking Act.  *Id.*  On May 5, 2014, the Court granted plaintiff Fanning's motion for sanctions for spoliation of evidence, finding that the circumstances underlying the April 2012 destruction of certain recordings constituted spoliation, and shifting the burden of proof regarding the disputed issue of whether Fanning's calls were recorded to HSBC.  ECF No. 246.  At the same time, the Court denied plaintiffs' motion for partial summary judgment, finding a genuine dispute of material fact as to whether Fanning's call was recorded.  *Id.*  Subsequent discovery confirmed that HSBC could not prove that plaintiff Fanning's calls were *not* recorded.

24.  Based partly on these rulings, plaintiff Lindgren filed his class action complaint on July 18, 2014.  On July 28, 2014, the *Lindgren* case was transferred to this Court.  *Lindgren* also asserted CIPA claims against HSBC and Capital One for recording telephone conversations of California HSBC credit card account holders without their consent, but because HSBC had called Lindgren on his cell phone, the *Lindgren* complaint also asserted a claim under Penal Code §632.7 – a claim that does not require any proof that the recorded conversation was "confidential."  On November 10, 2014, the Court consolidated the *Fanning* and *Lindgren* cases along with the subpoena enforcement action against Capital One that had been transferred to this Court from the U.S. District Court for the Eastern District of Virginia, *Fanning v. HSBC Card Services, Inc. et al*., Case No. 14cv1300 JVS RNB.

25.  Additional targeted discovery was served in the *Lindgren* matter, including requests for production of documents, interrogatories, and notices of deposition for HSBC as well as Capital One.  Capital One propounded discovery on plaintiff Lindgren, including requests for production, interrogatories and a notice for

deposition.  On March 15, 2015, plaintiff Lindgren was deposed by Capital One relating to standing.  After the production of voluminous documents relating to its purchase of assets from the HSBC Entities, a representative of Capital One was deposed on June 10, 2015. The *Fanning/Lindgren* plaintiffs subsequently dismissed the direct liability claims against Capital One on July 9, 2015, while preserving any successor liability claims arising out of the May 1, 2012 transaction.

26. On July 29, 2014, the *Medeiros* plaintiffs filed a class action complaint in the Southern District of California entitled *Medeiros et al. v. HSBC Card & Retail Services, Inc. et al.* (C.D. Cal. Case No. 2:15-cv-09093-JVS-AFMx).  The *Medeiros* complaint also alleges that HSBC violated CIPA by recording telephone conversations with plaintiffs concerning their HSBC credit card accounts without consent.  An Early Neutral Evaluation Conference was held in the *Medeiros* case on March 19, 2015 before Magistrate Judge Mitchell D. Dembin, but the case did not settle.  The parties later reached a settlement after a May 15, 2015 mediation with Judge Pappas (Ret.).

27. On May 13, 2015, HSBC filed a Notice of Pendency of Other Actions or Proceedings in the consolidated *Fanning/Lindgren* cases, identifying the *Medeiros et al. v. HSBC Card Services Inc. et al.* case that had been filed on July 29, 2014 in the Southern District of California, Case No., 3:14-cv-01786-JLS-MDD.  Plaintiffs in *Fanning/Lindgren* petitioned the Judicial Panel on Multidistrict Litigation on June 9, 2015 to transfer *Medeiros* to this Court.[1]  On July 7, 2015, the *Medeiros* plaintiffs filed their Motion for Preliminary Approval of the Settlement that resulted from the May 15, 2015 mediation.  The *Fanning/Lindgren* plaintiffs subsequently moved to

---

[1] On October 13, 2015, the JPML denied the *Fanning/Lindgren* plaintiffs' request to consolidate and transfer the *Medeiros* case to this Court, reasoning that "[b]ecause the four actions are pending before only two judges in adjacent districts, informal coordination of the actions, if necessary following the review of the putative settlement in Medeiros, appears practicable."  That Order was subsequently revised on October 21, 2015 to correct a factual error regarding Capital One's acquisition of certain HSBC assets.

intervene in the *Medeiros* case on July 16, 2015, after learning on July 8, 2015 that the *Medeiros* plaintiffs had reached a settlement in the *Medeiros* case that directly affected the rights of the *Fanning/Lindgren* plaintiffs and putative class members. On October 9, 2015, U.S. District Judge Sammartino, who was presiding over the *Medeiros* case, granted the *Fanning/Lindgren* plaintiffs' motion to intervene. On October 14, 2015, the *Fanning/Lindgren* plaintiffs moved to transfer the *Medeiros* case to this Court, which order was granted on November 23, 2015.

28.  Once all three cases were before this Court, counsel in the *Fanning/Lindgren* cases and counsel in the *Medeiros* case determined that it was in the best interest of the class to combine their efforts and attempt to reach a more favorable result than the one previously negotiated by the *Medeiros* plaintiffs. Accordingly, counsel for all parties participated in formal mediations before the Honorable Edward J. Infante (Ret.) of JAMS on February 18, 2016, March 24, 2016, and June 6, 2016. As a result of these mediations, the parties reached a new settlement in principle in the *Fanning/Lindgren* and *Medeiros* actions.

### Plan of Allocation, Claims Administration, and Notice

29.  I believe that the plan of allocation, claims administration, and notice provisions of this Settlement Agreement support my conclusion that this settlement is fair, reasonable, and adequate.  My colleagues and I have undertaken diligent efforts to create a plan of allocation that reflects the relative strengths of each category of putative class members' claims.  The relative amounts of recovery for each putative class member are based upon evidence gathered during discovery as analyzed by a third party data analyst, including records indicating that only some recordings of specific telephone calls could be matched with a California credit card account holder, records indicating that certain telephone conversations with a California HSBC credit card account holder may have taken place as to which a call may or may not have been recorded, and evidence that additional calls may have been placed and recorded, even though no records currently exist to document those

potential calls or their recording. Accordingly, to reflect these circumstances, the Settlement Agreement groups the Settlement Class Members into the following categories:

  a. All California credit card account holders listed in the records identifying HSBC California credit card account holders that were produced by Capital One in the *Fanning* Action in or about September 2014, whose telephone number(s) appear in the records of full-time recordings produced by Capital One in the *Fanning* Action in or about November 2013 – known as the "Direct Payment Group" (SA ¶2.31(a));

  b. All California credit card account holders listed in the records identifying HSBC California credit card account holders that were produced by Capital One in the *Fanning* Action in or about September 2014, who appear on the Mixed-Use Data list produced by HSBC in the *Fanning* Action on or about July 19, 2013 (SA ¶2.31(b));

  c. All California credit card account holders listed in the records identifying HSBC California credit card account holders that were produced by Capital One in the *Fanning* Action in or about September 2014, whose telephone number(s) appear in the autodialer logs produced by Capital One in the *Fanning* Action on or about July 17, 2015 and whose call records contain a result code that indicates that an actual telephone conversation took place (based on the result code keys provided by Capital One) (SA ¶2.31(c)); and

  d. To the extent not duplicative of the above, all California credit card account holders listed in the records identifying HSBC California credit card account holders that were produced by Capital One in the *Fanning* Action in or about September 2014, who appear in the list

DECLARATION OF MICHAEL RUBIN ISO PRELIMINARY APPROVAL OF SETTLEMENT
CASE NOS. 2:15-cv-09093 JVS (AFMx), 12-CV-00885-JVS-RNB

of potential class members produced in the *Fanning* Action by
Capital One on or about August 6, 2013 (SA ¶2.31(d)).

30.  There are actual records of recordings for individuals in the Direct
Payment Group.  Accordingly, because plaintiffs believe the record evidence shows
that these individuals' telephone calls with HSBC were recorded, no claim form will
be required for class members in the Direct Payment Group described in ¶29(a)
above.  SA ¶3.6(A).  Those class members will be paid on a per-call basis for each
recorded call.  *Id.*  The per-call amount paid to members of the Direct Payment
Group will be three times the amount paid to other class members, SA ¶3.6(A), (B),
again because of the evidence that these calls were actually recorded.

31.  California credit card account holders listed in ¶29(b)-(d) above must
submit a Claim Form in order to receive a payment.  This is because there is
insufficient evidence in the existing records to determine whether they actually had a
telephone conversation that was recorded.  The existing records show only that such
a telephone conversation might have occurred, and might have been recorded.
Accordingly, Settlement Class Members whose names appear on the Settlement
Class List in these categories must submit a claim form and affirm that they received
a telephone call regarding their HSBC credit card during the Class Period.  SA
¶3.6(b)(1).  No other information will be required in the Claim Form.  *Id.*

32.  A true and correct copy of the proposed claim form intended to be
provided to those persons whose name appears on the Settlement Class List but who
are not within the Direct Payment Group is attached as **Exhibit A-1** to this
declaration.  These individuals will also be compensated on a per call basis; they will
be paid the base award amount for each call that could have been recorded.
SA3.6(B)(1).  Because the evidence indicates that only three to thirty percent of calls
were recorded, these individuals will receive the base award amount for each call, in
contrast to individuals in the Direct Payment Group who will receive three times the
base award because the evidence indicates their calls were definitely recorded.

33. Because the possibility exists that currently available records do not identify all individuals who fit within the class definition, the parties also propose publication notice. To be eligible for a share of the settlement, Settlement Class Members whose names do not appear on the Settlement Class List must submit a timely Claim Form, on which they: (a) provide their full name and complete address (and e-mail address if available); (b) affirm that they received a telephone call regarding their HSBC credit card during the Class Period; (c) provide the telephone number at which the call was received; and (d) provide the approximate time frame when the call was received. SA ¶3.6(b)(2). A true and correct copy of the proposed claim form intended to be provided to those persons whose name does not appear on the Settlement Class List is attached as **Exhibit A-2**. Because no records exist indicating whether these individuals were called or recorded, they will be awarded one base award, as there is no way in which to calculate or prove a "per call" amount.

34. As further set forth in the Settlement Agreement, the individuals to be included in the Settlement Class List described above will initially be identified by AB Data using data produced in discovery in the *Fanning* Action by HSBC and Capital One. SA ¶3.4. Using the same discovery data, AB Data will determine how many telephone calls were placed to each individual on the Settlement Class List during the Class Period. *Id.* AB Data will provide HSBC the Settlement Class List, which shall include, to the extent available, the name, address (including e-mail address, if available), telephone number, and the number of telephone calls and/or recordings associated with each individual to be included in the Settlement Class. *Id.* After having reviewed and performed its own due diligence on AB Data's methodology, HSBC may add persons to the Settlement Class List whom HSBC and its expert consultant believe (in HSBC's sole discretion based on then-available records) are members of the Settlement Class. *Id.* After the Settlement Class List has been finalized, HSBC will ask Capital One to provide the most current email and

U.S. mail information for each person identified on the Settlement Class List to the Settlement Administrator within 30 days following finalization of the Settlement Class List.  *Id.*  Subject to the Court's approval, the parties propose using KCC LLC as the Settlement Administrator.  SA ¶2.28.

35.   Once the Settlement Class List has been finalized, the Settlement Administrator will provide individual notice by: (a) electronic mail to the most recent e-mail address on the Settlement Class List, to all persons in the Settlement Class for whom such records exist and who have not opted out of receiving electronic mail from HSBC Card Services Inc. (the "E-mail Notice"); or (b) postcard to the most recent mailing address on the Settlement Class List (i) for those persons in the Settlement Class for whom there is no e-mail address on the Settlement Class List and/or who have opted out of receiving e-mails from HSBC Card Services Inc., and (ii) to those persons in the Settlement Class to whom E-mail Notice was sent and returned as undeliverable (the "Mail Notice").  SA ¶3.5(A).  A true and correct copy of the proposed notice to persons in the Direct Payment Group is attached as **Exhibit A-4**.

36.   The Settlement Administrator shall perform a National Change of Address update before mailing the Mail Notice. The Settlement Administrator shall perform skip tracing for all returned electronic and direct mail. The E-mail Notice and Mail Notice shall direct recipients to the Settlement Website.  SA ¶3.5(A).

37.   A true and correct copy of the proposed notice to the class members whose name appears on the Settlement Class List but who are not within the Direct Payment Group is attached as **Exhibit A-3**.

38.   The Settlement Administrator will also establish and maintain the Settlement Website dedicated to the Settlement, on which will be posted the Website Notice, Claim Form, Settlement, Preliminary Approval Order, operative Complaints, and any other materials the Parties agree to include or as required by the Court.  SA ¶3.5(B).  The Settlement Website also shall provide for online submission of Claim

Forms and provide for persons in the Settlement Class to update their contact information. *Id.*

39. A true and correct copy of the proposed website notice to class members is attached as **Exhibit A-5**.

40. The parties intend notice also to be provided by publication of a quarter-page advertisement in the Los Angeles and San Francisco editions of the *USA Today* newspaper. SA ¶3.5(C). A true and correct copy of the proposed publication notice to class members is attached as **Exhibit A-6**.

41. The Settlement Administrator shall also set up a toll-free telephone number for receiving toll-free calls for the purpose of providing information and details about the Settlement and to request that a Claim Form be sent out. SA ¶3.5(D). That telephone number shall be maintained until thirty (30) days after the Opt-Out and Objection Deadline. After that time, and for a period of ninety (90) days thereafter, a recording will advise any caller to the toll-free telephone number that the deadline to submit a Claim Form has passed and that details regarding the Settlement may be reviewed on the Settlement Website. *Id.*

42. The Settlement Agreement provides that settlement awards will be paid by check or postcard check sent by first class mail to each eligible Settlement Class Member receiving a Settlement Award within forty-five (45) days after the Effective Date, including by performing skip tracing and re-mailing, as necessary. SA ¶3.7(A). A second distribution will be made if there remains money in the Settlement Fund sufficient to pay at least $10 to each Settlement Class Member who cashed his or her initial Settlement Award check. After calculating additional administration and mailing costs, such remaining monies will be distributed on a pro-rata basis to those Settlement Class Members. SA ¶3.7(B).

43. Under the Settlement Agreement, money in the Settlement Fund that has not been distributed, including money not distributed because there is not enough money in the Settlement Fund to justify a second distribution, will be paid as *cy pres*

to the Rose Foundation's Consumer Privacy Rights Fund, subject to Court approval. SA ¶3.7 (C).

44.   The parties have selected KCC LLC as the Claims Administrator, also subject to court approval.  SA ¶2.28.  KCC was selected based on bids obtained from three different claims administration companies because the services it was offering were both comprehensive as well as cost-efficient.  KCC has extensive experience in claims administration.  A true and correct copy of KCC's resume highlighting its experience and ability to handle administration of claims in this lawsuit is attached as **Exhibit B**.  My law firm has frequently used KCC to administer complex settlement agreements, and has been satisfied with their competence in addressing the needs of class members and the case.

45. The costs of administration will be paid out of the Settlement Fund.  SA ¶¶2.33, 3.5(A).   KCC estimates the cost of settlement administration to be approximately $803,182, with additional funds required if a Second Distribution is warranted under SA ¶3.7(b).  Of this amount, approximately $453,057 will be for postage for notice to over one million class members.  Given the work to be undertaken by KCC, including preparing, printing, and mailing over one million notices; providing website and telephone support to class members; reviewing and administering claims; preparing and paying for publication notice; preparing necessary tax documentation; and mailing out check distributions, I believe that this amount is a fair and reasonable amount to expend for the administration of a settlement fund of $13 million.

## Plaintiffs' Service Fees

46.   I am familiar with the efforts that plaintiffs Fanning, Jabbar and Lindgren have expended on behalf of the class.  I understand that these named plaintiffs have been active in pre-lawsuit filing by being available for conversations regarding their claims in this litigation and the investigation into those claims, and providing counsel with valuable information regarding their personal experiences relating to the

allegations of the complaints.  I am also aware that plaintiffs participated in settlement negotiations on behalf of the class and made themselves available regularly for updates on the progress of those negotiations.  Plaintiff Lindgren responded to Capital One's discovery requests, including by producing documents and responding to interrogatories. Plaintiff Fanning submitted a declaration in support of the motion for partial summary judgment filed in his case on March 3, 2014.  Plaintiff Lindgren was deposed on March 16, 2015 in connection with the *Lindgren* litigation.

47. As permitted by the Settlement Agreement and subject to the Court's approval, Class Counsel will seek $1,500 each as service payments for named plaintiffs Jabbar, Medeiros, Bomberger, Morrissey, and Pulatie, and $5000 each for named plaintiffs Lindgren and Fanning. SA ¶3.10.  I believe that this is a reasonable amount given their time and efforts.  We will present declarations from each of these plaintiffs attesting to their efforts on behalf of the class with the motion for final approval.

## Attorneys' Fees and Costs

48. As permitted by the Settlement Agreement, we anticipate moving for attorneys' fees of up to 33⅓% of the common fund; that is, up to $4,333,333.33 out of the $13,000,000 common fund.  We will also move for costs actually incurred, not to exceed $400,000.  As will be explained more fully in the motion for attorneys' fees and costs that we will file in the future, the requested amounts are fair and reasonable.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the foregoing is true and correct.  Executed this 26th day of August 2016, at San Francisco, California.

By: _____/s/ Michael Rubin_____
Michael Rubin

DECLARATION OF MICHAEL RUBIN ISO PRELIMINARY APPROVAL OF SETTLEMENT
CASE NOS. 2:15-cv-09093 JVS (AFMx), 12-CV-00885-JVS-RNB