1  MICHAEL RUBIN (SBN 80618)
   EVE CERVANTEZ (SBN 164709)
2  P. CASEY PITTS (SBN 262463)
   Altshuler Berzon LLP
3  177 Post Street, Suite 300
   San Francisco, California 94108
4  Telephone: (415) 421-7151
   Facsimile: (415) 362-8064
5  E-mail: mrubin@altber.com
           ecervantez@altber.com
6          cpitts@altber.com

7  ABBAS KAZEROUNIAN (SBN 249203)
8  Kazerouni Law Group, APC
   245 Fischer Avenue, Unit D1
9  Costa Mesa, CA 92626
   Telephone: (800) 400-6808
10 Facsimile: (800) 520-5523
   E-mail: ak@kazlg.com
11

12 *Attorneys for Plaintiffs*
   [Additional Counsel on Signature Page]
13

14                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
15

16 | GAIL MEDEIROS, et al., | Case No. 2:15-cv-09093 JVS (AFMx) |
   
   GAIL MEDEIROS, et al.,
                Plaintiffs,
17        v.
18 HSBC CARD SERVICES INC., et al.,
                Defendants.
19

20 TERRY FANNING, et al.,
                Plaintiffs
21        v.
22 HSBC CARD SERVICES INC., et al.,
                Defendants.
23

24 STEFAN O. LINDGREN,
                Plaintiff,
25        vs.
26 HSBC CARD & RETAIL SERVICES,
   INC., et al.,
27                Defendants.
28

Case No. 2:15-cv-09093 JVS (AFMx)

Case No. 12-CV-00885-JVS-RNB

Relates to: *Medeiros*, *Fanning*, and *Lindgren*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL**

Date: October 16, 2017
Time: 1:30 pm
Judge: Honorable James V. Selna
            Courtroom 10C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

I.    INTRODUCTION ....................................................................................... 1

II.    FACTUAL BACKGROUND ...................................................................... 2

    A. History of the Litigation ........................................................................ 2

    B. The Settlement ....................................................................................... 3

    C. Improvements Upon the Original *Medeiros* Settlement ........................ 5

    D. Notice, Exclusions, and Objections ...................................................... 6

III.    ARGUMENT ............................................................................................. 7

    A. Final Approval of the Settlement Is Appropriate ................................. 7

    B. The Settlement Is Entitled to a Strong Presumption of Fairness ............ 8

    C. The Settlement Is Fair, Reasonable, and Adequate ............................... 9

        1. The Strength of Plaintiffs' Case and the Risks and Delay of
           Further Litigation Support Approval .......................................... 9

        2. The Settlement Amount Is Beneficial to the Class .................. 11

        3. The Substantial Discovery Completed and the Stage of the
           Proceedings Support Approval ................................................. 12

        4. The Experience and Views of Class Counsel Support
           Approval .................................................................................. 13

        5. The Reactions of Class Members Support Settlement
           Approval .................................................................................. 13

        6. There Are No Signs of Collusion ............................................. 14

    D. The Sole Objection Should Be Overruled .......................................... 14

        1. Objector's Counsel Is a Professional Objector ........................ 14

        2. Plaintiff Lindgren Adequately Represents Class Members
           Who Received Calls on Cell Phones ........................................ 16

3. The Settlement Amount Is Fair, Reasonable, and Adequate When Weighed Against the Risks of Continued Litigation ...... 19

4. Class Notice Is Adequate ........................................................ 21

5. The Limited and Simple Claim Form Process Was Necessary ............................................................................. 21

6. Class Counsel's Request for One-Third of the Common Fund in Attorneys' Fees Is Reasonable and Non-Collusive ............. 22

7. Class Counsel's Fee Split Is Reasonable ................................. 24

IV.    CONCLUSION ........................................................................... 25

ATTESTATION ...................................................................................... 28

1

2

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007)........................................................................20

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................10

*Batmanghelich v. Sirius XM Radio, Inc.*,
    No. 09-cv-9190 VBF, 2011 U.S. Dist. LEXIS 155710
    (C.D. Cal. Sept. 15, 2011) ................................................................................19

*In re Bluetooth Headset Products Liability Litig.*,
    654 F.3d 935 (9th Cir. 2011) ....................................................................14, 23

*Brown v. Hain Celestial Grp., Inc.*,
    No. 3:11-cv-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016)..................16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    281 F.R.D. 531 (N.D. Cal. 2012) ......................................................................15

*Chambers v. Whirlpool Corp.*,
    214 F. Supp. 3d 877 (C.D. Cal. 2016) ..............................................................15

*Cohorst v. BRE Properties, Inc.*,
    No. 10-cv-2666 JM, 2012 WL 153754 (S.D. Cal. 2012) ....................................19

*Dennis v. Kellogg Co.*,
    No. 09-CV-1786-L WMC, 2013 WL 6055326
    (S.D. Cal. Nov. 14, 2013)..........................................................................15, 16

*Edwards v. Nat'l Milk Producers Fed'n*,
    No. 11-CV-04766-JSW, 2017 WL 3616638 (N.D. Cal. June 26, 2017) ..............25

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
    No. SACV15137-JLS-RNBX, 2016 WL 9107427
    (C.D. Cal. Aug. 18, 2016) ................................................................................10

*In re FPI/Agretech Sec. Litig.*,
    105 F.3d 469 (9th Cir. 1997) ............................................................................25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Garber v. Office of Comm'r of Baseball*,
   No. 12-CV-03704(VEC), 2017 WL 752183 (S.D.N.Y. Feb. 27, 2017) ...............15

*Glasser v. Volkswagen of Am., Inc.*,
   645 F.3d 1084 (9th Cir. 2011) ...................................................................16

*In re Google Referrer Header Privacy Litig.*,
   87 F. Supp. 3d 1122 (N.D. Cal. 2015) .................................................20

*Grant v. Capital Mgmt. Servs., L.P.*,
   No. 10-CV-2471-WQH BGS, 2014 WL 888665
   (S.D. Cal. Mar. 5, 2014).........................................................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..............................................8, 17, 18

*Hataishi v. First Am. Home Buyers Protection Corp.*,
   223 Cal. App. 4th 1454 (2014) ...........................................................10

*In re High-Tech Employee Antitrust Litig.*,
   No. 11-CV-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015)...............18

*Hoffman v. Bank of America, N.A.*,
   No. 12-cv-00539 DHB, Dkt. No.  67 (S.D. Cal. Nov. 6, 2014)............................19

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   No. 09CV1088 BTM KSC, 2013 WL 5275618
   (S.D. Cal. Sept. 17, 2013) ...................................................................15

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   No. 09CV1088 BTM KSC, 2014 WL 815394 (S.D. Cal. Mar. 3, 2014)..............15

*Kight v. CashCall, Inc.*,
   231 Cal. App. 4th 112 (2014) ............................................................10

*Knell v. FIA Card Services*,
   No. 12-cv-00426 WVG, Dkt. No. 79 (S.D. Cal. Aug. 15, 2014).........................19

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ..............................................................21

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ......................................................12, 20

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  No. 2:10-CV-00302 MRP (MANx), 2013 WL 6577020
  (C.D. Cal. Dec. 5, 2013)...............................................................16, 17

*Myles v. AlliedBarton Sec. Servs., LLC*,
  No. 12-cv-05761-JD, 2014 WL 6065602 (N.D. Cal. Nov. 12, 2014)....................20

*Nader v. Capital One Bank, N.A.*,
  No. 12-cv-01265 DSF, 2014 WL 12584442 (C.D. Cal. Nov. 17, 2014) ..............19

*Nat'l Rural Telecomm. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).....................................................11, 13

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
  No. 12-CV-01685-BAS JLB, 2015 WL 1309938
  (S.D. Cal. Mar. 24, 2015) .................................................................10

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ....................................................*passim*

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ..............................................................18

*In re Pac. Ents. Sec. Litig.*,
  47 F.3d 373 (9th Cir.1995)..........................................................13, 20

*Perkins v. Linkedin Corp.*,
  No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016).................21

*Quesada v. Bank of America Investment Svcs.*,
  No. 11-CV-01703 YGR, 2013 WL 623288 (N.D. Cal. Feb. 19, 2013) ..............10

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................18, 20, 21

*Sanchez v. Frito-Lay, Inc.*,
  No. 1:14-CV-00797 AWI, 2015 WL 4662636 (E.D. Cal. Aug. 5, 2015) .............18

PLAINTITTFS' MPA ISO MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NOS. 2:15-cv-09093-JVS (AFMx), 12-CV-00885-JVS-RNB

*In re Se. Milk Antitrust Litig.*,
   No. 2:07-CV 208, 2011 WL 3205798 (E.D. Tenn. July 28, 2011) .......................18

*Shaffer v. Cont'l Cas. Co.*,
   362 F. App'x 627 (9th Cir. 2010) ...............................................................................17

*Torres v. Nutrisystem, Inc.*,
   289 F.R.D. 587 (C.D. Cal. 2013) ...............................................................................10

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ......................................................................................... 9

*Trew v. Volvo Cars of N. Am., LLC*,
   No. Civ. S 05-1379, 2007 WL 2239210 (E.D. Cal. Jul. 31, 2007) ......................... 8

*Vasquez v. Coast Valley Roofing*,
   266 F.R.D. 482 (E.D. Cal. 2010) ...............................................................................13

*Ybarrondo v. NCO Fin. Sys., Inc.*,
   No. 05CV2057-L(JMA), 2008 WL 183714 (S.D. Cal. Jan. 18, 2008) ..................18

**Statutory Authorities**

Cal. Penal Code §632 .......................................................................................................16, 17

**Rules and Regulations**

Fed. R. Civ. P. 23 ........................................................................................................9, 17, 21

**Treatises**

Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 11:41
   (2006) ........................................................................................................................... 8

# I.     INTRODUCTION

After four years of highly contested litigation and several rounds of protracted settlement negotiations and mediation with Judge Edward Infante (Ret.) of JAMS, the settling parties in *Fanning et al. v. HSBC Card Services Inc. et al.*, C.D. Cal. Case No. 12-cv-00885 JVS (RNBx); *Lindgren v. HSBC Card Services Inc. et al.*, C.D. Cal. Case No. 14-cv-05615 JVS (RNBx); and *Medeiros et al. v. HSBC Card Services Inc. et al.*, C.D. Cal. Case No. 2:15-cv-09093-JVS-AFMx, agreed to the proposed Settlement Agreement ("Settlement" or "SA"), ECF No. 86-1.[1] Approximately 1.7 million Class Notices were sent to Class Members, and the Class Members' response to the Settlement was overwhelmingly positive. Roughly 11% of those required to file a claim to obtain compensation did so, while only seven individuals excluded themselves. There is only a single Objector, represented by an attorney who has repeatedly been criticized by courts for making frivolous objections to class action settlements and filing frivolous appeals.

This Settlement is fair, reasonable, adequate, and provides considerable benefits to the class, especially in light of the formidable litigation risks: legal, factual, and practical. The Settlement establishes a $13 million non-reversionary settlement fund to resolve this California Invasion of Privacy Act ("CIPA") litigation on behalf of Californians whose telephone calls with HSBC were recorded or monitored without their consent. This compares favorably to other recently approved CIPA class settlements. No claim form was required from any class member who was identified in defendants' records as having had a call recorded during the class period. The claim form required from class members who *might* have been recorded was a tear-off, postage pre-paid postcard on which they had to confirm only that they received a telephone call from HSBC about their credit card during the Class Period (which HSBC's records could not establish). Because Class

---

[1]All ECF cites are to the *Medeiros* docket, Case No. 2:15-cv-09093-JVS-AFMx.

1   Members are paid per phone call, those who were harmed more are paid more.

2        Objector ignores the substantial risks and expense of this litigation, as

3   reflected in the extensive discovery and pre-trial rulings during the past four years.

4   While Objector asserts that the settlement fund is too small given the potential

5   upside, she gives no weight to the risks and litigation posture at the time of

6   settlement and fails to identify *any* CIPA case in which a certified class was awarded

7   more than the amount of this settlement.

8        The essence of settlement is compromise. The experienced class action

9   counsel who tenaciously litigated this case for years were well aware of the relative

10   strengths, weaknesses, and uncertainties in the parties' positions – and how this

11   Court, the Ninth Circuit, and the Supreme Court might apply the evolving legal

12   standards governing CIPA class actions to the facts of this case. Objector's only

13   substantive argument pertains to Class Members who received a cell-phone call, but

14   Objector does not allege having been called on a cell phone (unlike plaintiff

15   Lindgren), and in any event her conflict argument is meritless. Further, Class

16   Counsel's request for 1/3 of the common fund as attorneys' fees, amounting to less

17   than a 1.13 multiplier on their reasonable lodestar (with more litigation on the

18   horizon, given Objector's counsel's past practice), is well justified under the

19   circumstances, and, in any event, is no reason to deny settlement approval. The

20   Settlement contains no "clear sailing" provision and does not *guarantee* any

21   particular amount of fees; rather, it *limits* the amount that Class Counsel may request.

22   The Court should approve the Settlement.

23   **II.     FACTUAL BACKGROUND**

24        **A.     History of the Litigation**

25        The history of the litigation and settlement is set forth in Plaintiffs' Motion for

26   Award of Attorneys' Fees and the Rubin Declaration in support. ECF Nos. 94-1, 94-

27   2. The HSBC defendants and the *Fanning/Lindgren* plaintiffs dug deeply into the

28

facts and law, engaged in significant discovery into, and expert analysis of, records of telephone calls and call recordings of putative class members, and briefed many complex legal and procedural motions before Magistrate Judge Block and this Court in preparation for class certification, trial, and the inevitable appeal that would have followed a ruling on the merits.  ECF No. 94-2 ¶¶17-28.  Those plaintiffs also intervened in the nearly identical *Medeiros* Action, which was filed several years after *Fanning* in the Southern District of California, and successfully blocked the initial proposed settlement while obtaining a transfer of venue so the cases could be litigated together.  ECF Nos. 20, 49, 55-1.  Plaintiffs' counsel in both sets of cases then agreed to work cooperatively on behalf of the class as a whole, and were eventually able to negotiate a global resolution of the cases with the assistance of Judge Infante – notwithstanding HSBC's position that it had a binding class action settlement agreement with the *Medeiros* class and no obligation to provide more funding or more favorable terms to the *Fanning/Lindgren* class.  ECF No. 94-2 ¶26.

On October 19, 2016, after the parties' successful re-negotiation, the Court conditionally certified the Settlement Class, preliminarily approved the proposed Settlement, approved the proposed Notices and Claims Forms, and ordered that Notice be disseminated in accordance with the Notice Plan.  ECF No. 88.

### B.    The Settlement

The Settlement Class is defined as:

> [A]ll persons in California who received a telephone call during the Class Period [March 23, 2009 through May 1, 2012] from or on behalf of [Defendant] HSBC Card Services Inc. and whose call was recorded or monitored by or on behalf of [Defendants] HSBC Card Services Inc. or HSBC Technology & Services (USA) Inc. [(collectively, "HSBC")].

SA ¶2.30.  The Settlement establishes a non-reversionary Settlement Fund of $13 million, which includes funds for payments to the class, attorneys' fees, litigation costs and expenses, service payments to the class representatives, costs of a Third-

1   Party Data Analyst to prepare the Settlement Class List, and the costs of a Claims

2   Administrator.  SA ¶¶2.33, 2.34, 3.3(A), 3.7(A).  A second pro rata distribution will

3   be made if there are sufficient funds after the expiration date of the first-round

4   checks to pay at least $10 to all Settlement Class Members who cashed their initial

5   settlement check.  SA ¶3.7.  The remainder will be donated to the Rose Foundation's

6   Consumer Privacy Rights Fund, subject to Court approval.  SA ¶3.7(C).

7        The Plan of Allocation reflects the relative strengths of each category of

8   putative Class Members' claims.  ECF No. 86 ¶29.  The Class Members include

9   54,191 California credit card account holders whose telephone numbers appear in

10   HSBC's records of full-time recordings.  SA ¶2.31(a); ECF No. 86 ¶30; Robin Decl.

11   ¶¶8-9.  No claim form was required from those individuals (the "Direct Payment

12   Group") because the record shows their calls *were* recorded. SA ¶3.6(A); ECF No.

13   86 ¶30.  Those Class Members will be paid on a per-call basis for each recorded call,

14   with the per-call amount being three times the per-call amount paid to other Class

15   Members (the "base award").  *Id.*  For other Class Members (in the groups defined at

16   SA ¶2.31(b)-(d)), the record shows only that defendants *might* have called them and

17   *might* have recorded those calls.  ECF No. 86 ¶31. Those Class Members must

18   submit a Claim Form affirming that they received a telephone call regarding their

19   HSBC credit card during the Class Period, because the existing records do not

20   clearly establish whether they actually had a conversation that could have been

21   recorded.  SA ¶3.6(B)(1); ECF No. 86 ¶31.  Because the evidence indicates that only

22   3-30% of these calls were recorded, these individuals will receive the base award

23   amount for each call that could have been recorded, rather than the three-times-

24   higher per-call amount paid to members of the Direct Payment Group.  SA

25   ¶3.6(B)(1); ECF No. 86 ¶32.  The Settlement also calls for publication notice to

26   account for the possibility that currently available records do not identify all Class

27   Members.  SA ¶3.6(B)(2); ECF No. 86 ¶33.  Individuals falling into this category

28

will be paid the base award amount, without any per-call variation, because there is no way to calculate how many calls to such individuals (if any) were recorded. *Id.*

The Settlement Fund will pay for the Court-approved Notice Plan, including postage to nearly 1.7 million Class Members and the Third-Party Data Analyst's services to match HSBC credit card account holder information to telephone call and recording information. SA ¶¶3.4-3.5. The Settlement Fund will also be used to pay court-approved service awards not to exceed $5,000 each to Representative Plaintiffs Terry Fanning and Stefan Lindgren, and not to exceed $1,500 each to Representative Plaintiffs Tatiana Jabbar, Gail Medeiros, Tracy T. Bomberger, Peter Morrissey, and Julie Pulatie. SA¶3.10; ECF No. 86 ¶¶ 46-47. The Settlement Agreement also permits Class Counsel to apply for reimbursement of litigation expenses and for an award of attorneys' fees from the common fund, and limits the fee that Class Counsel may request to one-third of the common fund. SA ¶3.9.

**C. Improvements Upon the Original *Medeiros* Settlement**

When plaintiffs in *Fanning, Lindgren*, and *Medeiros* joined forces in further mediation with HSBC, they were able to significantly improve upon the *Medeiros* settlement, over HSBC's strong opposition, in the following ways:

(1) The gross settlement fund was nearly tripled to $13 million. SA ¶3.3(A). Under *Medeiros*, the gross settlement fund was $4.5 million (with a potential increase to a maximum of $6.5 million if a certain number of class members filed claims). ECF 20-3 ¶¶2.16-2.17.

(2) Based on HSBC records obtained in the *Fanning/Lindgren* cases, the class list was substantially reduced (and the per-capita recovery correspondingly increased) by eliminating individuals who had no possible claim because HSBC records established that they could not have been recorded. Schachter Decl. ¶4; Cervantez Decl. ¶4. Class Notice was sent to 1,725,438 Class Members, rather than to the 2,593,259 individuals contemplated by the *Medeiros* settlement. *Compare*

Robin Decl. ¶7, *with* ECF No. 69-1, at 24.  Thus, Class Members' recovery was not diluted by a distribution of settlement funds to 867,821 non-Class Members or by the cost of mailing notice to those non-Class Members.

(3) The increase in the gross settlement fund, and the decrease in the number of individuals entitled to a share of that fund, effectively *quadrupled* the average gross settlement amount per Class Member from $1.84 in the *Medeiros* settlement to $7.54.

(4) Class Members will be paid on a per-call basis, so those who had greater statutory injury resulting from more frequent call recording will receive more.  SA ¶3.6; ECF No. 86 ¶32.  The *Medeiros* settlement paid all Class Members, even those called multiple times, the same amount.  ECF No. 69-3 ¶3.6(A).

(5) The 54,191 individuals for whom there is proof of recording are not required to file a claim form, and will recover three times more per recorded telephone call than those for whom there is no proof of recording.  SA ¶3.6(A); Robin Decl. ¶¶8-9.  Checks will automatically be mailed to these Class Members. SA ¶3.7(A).  The original *Medeiros* settlement required all Class Members to file a claim form, and did not distinguish between those for whom there was proof of recording, and those for whom there was none.  ECF No. 69-3 ¶3.6.

 (6) The Claim Form (for those where no proof of recording exists) was simplified to request only information necessary to make sure these individuals are Class Members – they need only affirm that they received a phone call from HSBC. ECF No. 86 ¶31.  Class members are not required to provide the telephone number at which they were called, or to swear that they were not warned that their calls were recorded, because *Fanning/Lindgren* plaintiffs learned these facts in discovery.

### D.    Notice, Exclusions, and Objections

Notice was provided in accordance with the Court's Order and the Notice Plan, including publication notice and creation of a website with case materials,

including Plaintiffs' Motion for Attorneys' Fees.  Robin Decl. ¶¶7-17.  The Third-Party Data Analyst determined the Class List by matching records of California HSBC credit card account holders with various lists of phone calls placed and recorded.  Robin Decl. ¶5; Schachter Decl. ¶¶3-5.  The parties jointly turned to Capital One to provide updated email and U.S. mail addresses to the extent available.  Robin Decl. ¶6.  The Settlement Administrator mailed postcard notice to 1,531,043 Class Members, and emailed notice to another 179,731 Class Members.  Robin Decl. ¶¶7-13.  When Notices were returned, the Settlement Administrator searched for new addresses and re-mailed the Notices.  Robin Decl. ¶14.  Only 70,848 notices were returned and not re-mailed because no new address could be found, despite the Settlement Administrator's diligent search.  *Id.*

Of the 1.67 million Class Members required to submit claim forms, approximately 183,430 – roughly 11% – filed claims.  Robin Decl. ¶19.[2]  An additional 54,191 Class Members in the Direct Payment Group will receive checks without being required to file a claim form.  Only seven individuals out of 1.7 million Class Members to whom Notice was sent excluded themselves from the settlement.  Robin Decl. ¶18.  Only one Class Member objected.

## III.   ARGUMENT

### A.   Final Approval of the Settlement Is Appropriate.

The Ninth Circuit recognizes a strong policy favoring voluntary settlement of complex class actions.  "[V]oluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  This is "especially true in complex class action[s]," which lend themselves to compromise because of the difficulties of proof, uncertainty of

---

[2] KCC is still reviewing claims to eliminate potential duplicates (such as where a class member both returned a postcard and filed an online claim form) and will provide updated information when it becomes available.  Robin Decl. ¶19.

1   outcome, and length and complexity of litigation.  *Id.*

2        When determining whether to grant final approval, "the court's intrusion upon

3   what is otherwise a private consensual agreement negotiated between the parties to a

4   lawsuit must be limited to the extent necessary to reach a reasoned judgment that the

5   agreement is not the product of fraud or overreaching by, or collusion between, the

6   negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and

7   adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625; *Hanlon v. Chrysler*

8   *Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole,

9   rather than the individual component parts, that must be examined for overall

10  fairness.").  This Court previously concluded that the settlement is "fair, reasonable

11  and adequate and within the range of possible approval."  ECF No. 88 ¶4.  There is

12  no reason to conclude otherwise now.

13       **B.**    **The Settlement Is Entitled to a Strong Presumption of Fairness.**

14       "When seeking final approval, plaintiffs may establish a presumption of

15  fairness by demonstrating: '(1) [t]hat the settlement has been arrived at [through]

16  arm's-length bargaining; (2) [t]hat sufficient discovery has been taken or

17  investigation completed to enable counsel and the court to act intelligently; (3)

18  [t]hat the proponents of the settlement are counsel experienced in similar litigation;

19  and (4) [t]hat the number of objectors or interests they represent is not large when

20  compared to the class as a whole." *Trew v. Volvo Cars of N. Am., LLC*, No. Civ. S

21  05-1379, 2007 WL 2239210, at *2 (E.D. Cal. Jul. 31, 2007) (quoting Alba Conte

22  and Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (2006)).

23       As discussed more extensively in Plaintiffs' Motion for Attorney's Fees, (1)

24  Class Counsel are highly experienced in complex class action litigation; (2) plaintiffs

25  conducted extensive discovery and motion practice that allowed Class Counsel to

26  knowledgeably negotiate the settlement; (3) the parties arrived at the settlement

27  through arm's-length bargaining among competent and experienced counsel and an

28

experienced mediator; and (4) class notice was mailed to 1.7 million Class Members, only seven of whom opted out, and only one of whom objected.  ECF No. 94-1, at 2-7; ECF No. 86 ¶¶7-18; Robin Decl. ¶18.  The settlement is presumptively fair.

### C.  The Settlement Is Fair, Reasonable, and Adequate.

Federal Rule of Civil Procedure 23(e) requires that a class action settlement be approved if it is "fair, reasonable, and adequate."  The Ninth Circuit has identified a list of factors the district court should consider in making this determination:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  All relevant factors identified by the Ninth Circuit weigh in favor of final settlement approval.

### 1.  The Strength of Plaintiffs' Case and the Risks and Delay of Further Litigation Support Approval.

Plaintiffs believe that the claims asserted in the litigation have merit, but recognize the substantial risks involved in continuing this litigation.  HSBC has aggressively maintained its positions regarding standing, ascertainability, class certification, liability (especially with respect to consent and confidentiality), and damages.  Class Counsel are aware of the inherent problems of proof and possible defenses to the claims asserted and recognize the difficulties in establishing liability on a class-wide basis through summary judgment or trial, or in achieving a result for the class that materially improves upon the result obtained through settlement.

Prosecuting this litigation through trial and appeal would be time-consuming

and expensive, and would impose significant costs on all parties and the court system.  *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them").  Substantial motion practice, further fact discovery, extensive expert analysis of call recording data, class certification proceedings, further dispositive motions, and, of course, a trial and appeal would all be required.

    If the parties continued to litigate, class certification could be a substantial hurdle.  The risk is particularly significant in cases involving statutory damages, such as this, where there are only some records of recordings and only some means of correlating those records with specific Class Members, but no clear way, absent burden-shifting (which plaintiffs contend should apply), to establish which Class Members were actually recorded, when, or how often.  Many recent cases have denied class certification in CIPA cases, or decertified cases originally certified.[3] Plaintiffs believe that these CIPA cases are factually distinguishable, but there is no doubt that a motion for class certification would require significant judicial, financial, and attorney resources, and that the outcome would be uncertain.

    Although the Court initially denied HSBC's motion for summary judgment on several issues related to HSBC's contention that Class Members consented to be

_____

[3] *See, e.g., Hataishi v. First Am. Home Buyers Protection Corp.*, 223 Cal. App. 4th 1454 (2014); *Kight v. CashCall*, Inc., 231 Cal. App. 4th 112, 128 (2014); *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, No. SACV15137-JLS-RNBX, 2016 WL 9107427, at *2 (C.D. Cal. Aug. 18, 2016); *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-CV-01685-BAS JLB, 2015 WL 1309938, at *7 (S.D. Cal. Mar. 24, 2015), *on reconsideration, sub nom. NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, No. 12-CV-01685-BAS JLB, 2015 WL 4923510 (S.D. Cal. Aug. 18, 2015), *see also* 2016 WL 2610107 (S.D. Cal. May 6, 2016); *Quesada v. Bank of America Investment Svcs.*, No. 11-CV-01703 YGR, 2013 WL 623288 (N.D. Cal. Feb. 19, 2013); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. 2013).

1   recorded, that denial was based on the existence of triable facts, leaving the

2   underlying defense unresolved.  ECF No. 86 ¶23.  Similarly, although the Court

3   generally ruled in plaintiff Fanning's favor with respect to spoliation and burden-

4   shifting, it declined to grant summary judgment to Fanning, again because of triable

5   facts.  *Id.*  The extent of any burden-shifting thus remains an open issue.  HSBC has

6   also taken the position that even if plaintiffs were to prevail at class certification and

7   at trial, an award of aggregated statutory damages would violate the excessive fines

8   and due process provisions of the U.S. and California Constitutions.

9          Finally, any decision on the merits would surely be appealed, causing further

10  delays and uncertainties.  The Settlement, in contrast, delivers a real, substantial, and

11  immediate remedy that fairly, reasonably, and adequately addresses the situation

12  confronting the members of the Settlement Class without the risk and delay inherent

13  in prosecuting this matter through trial and appeal.  *See Grant v. Capital Mgmt.*

14  *Servs., L.P.*, No. 10-CV-2471-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar.

15  5, 2014) ("The court shall consider the vagaries of the litigation and compare the

16  significance of immediate recovery by way of the compromise to the mere

17  possibility of relief in the future, after protracted and expensive litigation. In this

18  respect, it has been held proper to take the bird in hand instead of a prospective flock

19  in the bush.") (citations and quotations omitted); *Nat'l Rural Telecomm. v.*

20  *DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is

21  clearly inadequate, its acceptance and approval are preferable to lengthy and

22  expensive litigation with uncertain results.") (internal quotation marks omitted).

23                    **2.       The Settlement Amount Is Beneficial to the Class.**

24         In determining whether a settlement is fair, reasonable, and adequate, the

25  Court should consider the amount offered in settlement.  *Officers for Justice*, 688

26  F.2d at 625.  The amount provided here is significant, and certainly reasonable and

27  adequate, particularly when balanced against the identifiable risks.  The $13 million

28

gross settlement is almost triple the previously negotiated *Medeiros* settlement, quadruples the prior average recovery per Class Member, and is reasonable in light of the risk, complexity, and delay that would come with further litigation.  To be certain, if plaintiffs were to succeed in certifying a class and then establishing that burden-shifting applies to the more than 1.7 million members of the proposed class, that the Class Members' phone calls were confidential, that Class Members had not consented to the recording of their calls, and that an award of all statutory penalties would be constitutional, the class might recover more than $8.5 *billion*.  But in light of the risks facing the class, there is almost no chance of such a recovery, and the value of the settlement to the class is better evaluated by looking to prior CIPA lawsuits, which have generally resulted in significantly smaller awards.

The settlement amount is also fairly and reasonably allocated among Class Members.  Class Members are paid on a per-call basis, so those who had greater claims as a result of having received a greater number of potentially recorded calls receive greater compensation.  Additionally, Class Members for whom proof of recording exists will receive a check in the mail without even filing a claim form.  Because there is proof that their calls were actually recorded, those Class Members will receive three times the base award per telephone call allocated to other Class Members whose calls might have been recorded (because only 3-30% of calls that could have been recorded actually were, and there is no way now to determine which calls were recorded and which were not).

### 3.   The Substantial Discovery Completed and the Stage of the Proceedings Support Approval.

Courts examine the extent of discovery completed and the current stage of the litigation to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).  "A settlement following sufficient discovery and

genuine arms-length negotiation is presumed fair." *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 489 (E.D. Cal. 2010).  Plaintiffs engaged in substantial discovery beneficial to the class, engaging in 14 discovery hearings and extensive expert analysis to secure the call recording data and autodialer logs.  ECF No. 86 ¶¶20-21.  Class Counsel understand the strength and limitations of the records they collected; and the Court's prior rulings on the parties' initial summary judgment motions provided some level of predictability that informed the settlement process.

### 4.      The Experience and Views of Class Counsel Support Approval.

In evaluating a proposed class action settlement, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (internal quotation marks omitted).  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Here, class counsel have extensive experience litigating complex class actions and are well-positioned to assess the risks of continued litigation and the benefits obtained by the settlement, given the extent of discovery and motion practice completed. *See, e.g.*, ECF No. 86 ¶¶7-18.  The parties negotiated the settlement in good faith and at arm's length. *Id.* ¶28.  Class Counsel believe the settlement is fair, reasonable, adequate, and in the best interests of the class.

### 5.      The Reactions of Class Members Support Settlement Approval.

Of more than 1.7 million Class Members who were mailed class notice, only seven excluded themselves from the settlement, while 183,432 (roughly 11% of the Class) filed claims.  Only one objection was filed.  The positive reaction of 1.7 million Class Members supports a finding that the settlement is fair.

**6. There Are No Signs of Collusion.**

When a classwide settlement is reached before the district court grants class certification, courts should apply a heightened level of scrutiny to look for evidence of collusion between plaintiffs' counsel and defendants and for any other kind of conflict of interest. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011). There is no such evidence of collusion or conflict here.

First, there is no "clear sailing" provision, in which defendant agrees not to oppose a specified award of attorneys' fees independent of the relief to the class. Rather, Class Counsel agreed to seek fees as a percentage of whatever common fund they negotiated for the class. Thus, Class Counsel's interests are aligned, rather than in conflict with, those of the Class – the greater the total Settlement Fund, the more money available for both the Class and Class Counsel. More important, any requested attorneys' fees or costs that are not approved by the Court will be applied to the net settlement fund available for the class, rather than reverting to the settling defendant. *Cf. Bluetooth*, 654 F.3d at 947. The settlement is not contingent on the Court's award of fees and costs to class counsel or service awards to the named plaintiffs. SA ¶¶3.9, 3.10. Nor are there any other indicia of collusion.

**D. The Sole Objection Should Be Overruled.**

**1. Objector's Counsel Is a Professional Objector.**

While the Court should certainly take all objections seriously in fulfilling its obligations to the class and should review any class settlement independently even when there are no objections, it bears mention that the lone Objector in this case involving 1.7 million Class Members is represented by attorneys who are well known as serial objectors who file meritless objections for the purpose of extracting pay-off money from class counsel, rather than improving settlements for the good of the class. "[W]hen assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly

when indicative of a motive other than putting the interest of the class members first." *Dennis v. Kellogg Co.*, No. 09-CV-1786-L WMC, 2013 WL 6055326, at *4 n.2 (S.D. Cal. Nov. 14, 2013) (internal quotation marks omitted).

Several courts have identified attorneys Timothy R. Hanigan and Christopher Bandas (whose law firm represents Objector) as repeat objectors.[4]  Indeed, this Court has found Bandas and Hanigan to be "'serial' objectors who routinely file meritless objections to class action settlements for the improper purpose of extracting a fee rather than to benefit the Class." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 890 (C.D. Cal. 2016).  "Bandas routinely represents objectors … and does not do so to effectuate changes to settlements, but does so for his own personal financial gain …." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 & n.4 (N.D. Cal. 2012).[5]  The objections raised here may have been made with "a motive

---

[4] Bandas has not formally filed a notice of appearance.  ECF No. 95, at 5.  This appears to be a common tactic on his part, perhaps to avoid sanctions.  *See, e.g.*, *Garber v. Office of Comm'r of Baseball*, No. 12-CV-03704 (VEC), 2017 WL 752183, at *3 (S.D.N.Y. Feb. 27, 2017) (Bandas "refused to respond" to a Rule 11 motion on grounds that he could not be sanctioned because he was not before the Court, despite the fact that he represented the objector and drafted the objection); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2014 WL 815394, at *2-3 (S.D. Cal. Mar. 3, 2014) (declining to issue Order to Show Cause for lack of personal jurisdiction over Bandas, despite "serious" allegations that Bandas "caused objections to be filed for the improper purpose of pressuring the settling parties to pay a significant amount of money to make the objections go away").

[5] *See also, e.g.*, *Garber*, 2017 WL 752183, at *4, *6 ("Bandas' behavior has been, at best, unprofessional, and at worst, an unseemly effort to extract fees from class counsel in exchange for the withdrawal of a meritless objection to the proposed class settlement …. This Court joins the other courts throughout the country in finding that Bandas has orchestrated the filing of a frivolous objection in an attempt to throw a monkey wrench into the settlement process and to extort a pay-off."); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013) (finding credible the testimony of an attorney that, during a phone call, "Mr. Bandas said that he didn't care about changing one word of the settlement" and "could hold the settlement process up for

1  other than putting the interest of the class members first."  *Dennis*, 2013 WL

2  6055326, at *4 n.2.[6]

3        **2.    Plaintiff Lindgren Adequately Represents Class Members**

4              **Who Received Calls on Cell Phones.**

5        There is no merit to Objector's argument that Class Members who received

6  calls on cell phones require a separate subclass and separate counsel.  *See* ECF No.

7  95, at 7-8.  Even if there were, Objector Chavez has no standing to assert such an

8  objection because she has not submitted any evidence that defendants called her on a

9  cell phone.  *See generally* ECF No. 95-1 (stating that she received telephone calls

10 from HSBC, but not that she received those telephone calls on a cell phone); *see*

11 *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *10

12 (N.D. Cal. Feb. 17, 2016) (citing *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084,

13 1088 (9th Cir. 2011), for the proposition that a "class member 'lacks standing' to

14 challenge settlement unless proposed change would 'actually benefit' her").

15       The Settlement Class *does* have a representative who received a call on a cell

16 phone: named plaintiff Lindgren.  Lindgren also specifically pleaded claims under

17 Penal Code §632.7.  ECF No. 94-2 ¶22.  Lindgren would be adequate to represent

18 any cell phone subclass, were such a subclass necessary (which it is not).[7]

19       In any event, "not every distinction among class members requires the creation

20 of a subclass."  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302

---

22 two to three years," and concluding that Bandas was "attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away").

23 [6] Indeed, a lawsuit has been filed against Bandas and the Bandas Law Firm (among

24 others) "based upon Defendants' practice of extorting monetary payments through

25 abuse of the court system and by engaging in vexatious and harassing litigation and wire fraud" and alleging, *inter alia*, violations of RICO.  *See Edelson PC v. The*

26 *Bandas Law Firm PC, et. al.*, Case No. 1:16-cv-11057 (N.D. Ill. Dec. 5, 2016).

27 [7] The Objection implies that Objector Chavez was called on her cell phone, ECF No.

28 95, at 8, but Chavez's signed declaration does not so state, ECF No. 95-1.

1    MRP (MANx), 2013 WL 6577020, at *17 (C.D. Cal. Dec. 5, 2013); *Shaffer v. Cont'l*

2    *Cas. Co.*, 362 F. App'x 627, 630-31 (9th Cir. 2010) ("[T]he fact that it is *possible* to

3    draw a line between categories of class members does not necessarily *require*

4    separate representation for each category.").  Rather, subclasses are necessary only

5    "where differences between class members would affect the adequacy of

6    representation" under Fed. R. Civ. P. 23(a)(4).  *Maine State*, 2013 WL 6577020, at

7    *17 (quotes and alteration omitted).  The differences between Class Members who

8    received calls on cell phones and Class Members who received calls on landlines

9    does not affect the adequacy of representation here.  Class representatives are

10   "adequate" if they lack "any conflicts of interest with other class members" and will

11   "prosecute the action vigorously on behalf of the class."  *Hanlon*, 150 F.3d at 1020.

12   There is no antagonism between cell phone users and landline users here: *all* Class

13   Members experienced the same alleged harm – being recorded without knowledge or

14   consent – and all have claims for the same statutory penalty of $5,000 per recorded

15   conversation.  *See* Cal. Penal Code §§632, 632.7.

16        Nor does the class representatives' decision to allocate settlement funds

17   without regard to which calls were made on landlines versus cell phones amount to a

18   *conflict*, particularly because one of those class representatives himself received a

19   call on a cell phone.  Objector argues that "the risk of litigation" was reduced for

20   Class Members called on cell phones.  But those Class Members still had to prove

21   that they were called, that they had a conversation, that they were recorded, and that

22   the recording violated CIPA.  They also had to prove one additional fact that Class

23   Members called on a landline did not – that they were physically in California when

24   they received the call.  A cell phone user with a California area code who was called

25   while in a different state arguably could *not* pursue *any* CIPA claim, which was a

26   litigation risk the landline users had no need to overcome.

27        Slight differences in litigation risk do not rise to the level of a fundamental

28

conflict.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) ("[W]e do not favor denial of class certification on the basis of speculative conflicts.") (quotation omitted); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.6 (9th Cir. 2009) (speculative conflict insufficient to require subclassing).[8]

Objector does not and cannot argue that Class Members who received calls on cell phones suffered greater *harm* than other Class Members or that they were entitled to a greater statutory penalty.  Paying cell phone Class Members a greater share of the settlement than Class Members who experienced an identical harm could itself raise conflict-of-interest or fairness questions.  *See Hanlon*, 150 F.3d at 1021 (finding that adequacy was satisfied where class members had "the same problem" and accordingly received "identical" treatment under the settlement).[9]  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (quotation omitted). That is precisely what the Settlement does – reimburses each Class Member based on the number of known or potentially recorded calls.

---

[8] *In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2011 WL 3205798 (E.D. Tenn. July 28, 2011), involved a non-speculative, non-trivial conflict, evidenced by "affidavits of [subclass members] who believe that they and most other [subclass members] actually benefit from the challenged conduct."  *Id.* at *9.

[9] The cases cited by Objector illustrate this point.  In *Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05CV2057-L(JMA), 2008 WL 183714 (S.D. Cal. Jan. 18, 2008), the court denied a motion for preliminary approval where "[t]he class members who sustained greater damage [would] receive less relief than the class members who sustained lesser damage."  *Id.* at *2.  Similarly, in *Sanchez v. Frito-Lay, Inc.*, No. 1:14-CV-00797 AWI, 2015 WL 4662636, at *11 (E.D. Cal. Aug. 5, 2015), the court denied a motion for preliminary approval because the proposed settlement was allocated based on total pay periods worked, and failed to take into account that the amount of harm also depended on hourly wage rates.  Here, in contrast, the Settlement does take into account degree of harm – Class Members are paid on a per-call basis, so that those who were recorded more are paid more.

### 3. The Settlement Amount Is Fair, Reasonable, and Adequate When Weighed Against the Risks of Continued Litigation.

In the context of the risks of continuing to litigate the cases and the advanced stage of discovery in the *Fanning/Lindgren* cases, the $13 million gross settlement fund is fair, reasonable, and adequate. The average per capita gross recovery here – $7.54 per Class Member – is far greater than in other CIPA settlements.[10] Objector is wrong that these other cases may have had lower potential damages, because the potential statutory per capita recovery in all CIPA cases is identical.[11]

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. This is so because the "very essence of a settlement is compromise." *Id.* at 624. A proposed settlement should not be "judged against a hypothetical or speculative measure of what *might* have been achieved by

---

[10] *See, e.g.*, *Knell v. FIA Card Services*, No. 12-cv-00426 WVG, Dkt. No. 79 (S.D. Cal. Aug. 15, 2014) ($0.75 per class member); *Hoffman v. Bank of America, N.A.*, No. 12-cv-00539 DHB, Dkt. No. 67 (S.D. Cal. Nov. 6, 2014) ($1.86 per class member); *Nader v. Capital One Bank, N.A.*, No. 12-cv-01265 DSF, 2014 WL 12584442 (C.D. Cal. Nov. 17, 2014) ($2.73 per class member); *Cohorst v. BRE Properties, Inc.*, No. 10-cv-2666 JM, 2012 WL 153754 (S.D. Cal. 2012) ($4.70 per class member); *Batmanghelich v. Sirius XM Radio, Inc.*, No. 09-cv-9190 VBF, 2011 U.S. Dist. LEXIS 155710 (C.D. Cal. Sept. 15, 2011) ($5.77 per class member).

[11] Objector's attempt to quantify the value of any potential trial victory is overstated. For example, Objector relies on early estimates from HSBC that 146,000 individuals were recorded, ECF No. 95, at 3, even though actual records produced and analyzed by the Third-Party Data Analyst found evidence of recording for just over one-third of that number. Robin Decl. ¶¶8-9. Similarly, Objector's argument that the 1.67 million individuals who might have been recorded have damages in the neighborhood of $8 billion, ECF No. 95, at 9, ignores that only 3-30% of telephone calls were recorded and that no records exist sufficient to identify the vast majority of those persons. If plaintiffs were to proceed to trial and not succeed in establishing burden-shifting, none of those class members would recover anything, and the 54,191 others would only recover if they proved every element of their CIPA claims in the face of HSBC's numerous defenses.

---

the negotiators" at trial, since "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Linney*, 151 F.3d at 1242. Nor need the court "specifically weigh[] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter." *Rodriguez*, 563 F.3d at 965. "[I]t is the parties themselves, as opposed to the court or the objectors, who are in the best position to assess whether a settlement 'fairly reflects' their 'expected outcome in litigation.'" *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1137 (N.D. Cal. 2015), *aff'd*, 2017 WL 3601250 (9th Cir. Aug. 22, 2017) (quoting *In re Pac. Ents. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995)).

As discussed above, plaintiffs faced substantial risk, including on class certification, the merits, and the magnitude of potential damages. *See supra* Section III.C.1.[12] Objector does not explain how any of these risks are overstated and does not direct the Court to a single case in which a certified class prevailed in a CIPA claim that was tried to judgment, let alone a case in which such a class was awarded millions of dollars. Class Counsel's extensive discovery and motion practice over the course of four years also distinguishes this case from *Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-cv-05761-JD, 2014 WL 6065602 (N.D. Cal. Nov. 12, 2014), in which, because of inadequate discovery, the court had insufficient information to allow it "to determine whether the steep discount in plaintiffs' recovery [was] justified." *Id.* at *4.

In light of the formidable risks – including that plaintiffs could lose class certification or the merits and recover nothing – the fact that the settlement amount is less than the potential damages does not make it unfair or unreasonable. *See Perkins*

---

[12] These risks distinguish this case from *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007), where the class was likely to obtain class certification and had a strong case on the merits. *Id.* at 391-93.

*v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *5 (N.D. Cal. Feb. 16, 2016) (overruling objections that failed to "adequately take into account the risks and delays involved in proceeding to class certification, summary judgment, and/or trial").

### 4.    Class Notice Is Adequate.

This Court already found that the Notice sent to Class Members "complies with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and constitutes the best notice practicable under the circumstances." ECF No. 88 ¶11.  There is no reason to revisit that finding.  The Ninth Circuit has squarely rejected Objector's contention that the Notice had to inform Class Members about "the $5,000 per violation recovery [potentially available] under CIPA." ECF No. 95, at 11; *see Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012); *Rodriguez*, 563 F.3d at 962.

### 5.    The Limited and Simple Claim Form Process Was Necessary.

A simple claim form for certain putative Class Members was necessary to avoid diluting Class Members' recovery through payments to individuals who are not Class Members. The class is defined as all persons in California "whose call was recorded or monitored" by HSBC. SA ¶2.30.  Accordingly, the Settlement does not require submission of a claim form by those who fit squarely within the class definition:  individuals for whom evidence of call recording exists. SA ¶3.6(A).[13] However, HSBC also has records of many other telephone numbers that it called, although no records establish which of these telephone calls were recorded.  ECF No. 86 ¶31.  Although we will never know precisely who was recorded, we *can* determine who *might* have been recorded, by determining who had a telephone

---

[13] *Fanning/Lindgren* Plaintiffs objected to the original *Medeiros* settlement's requirement that even individuals known to have been recorded file a claim form. ECF No. 49, at 24.  That problem has been addressed in the new Settlement.

1    conversation with HSBC.  The only way to know is to ask the putative class

2    members, because this information is not available from HSBC records.  That HSBC

3    called a telephone number does not mean HSBC could have recorded a telephone

4    conversation because, for example, the individual called may not have answered, or

5    may have hung up without speaking.[14]  However, plaintiffs insisted on the simplest

6    claim form possible – a tear-off postcard with return postage paid that, upon being

7    signed and dated, affirmed that the Class Member received a telephone call from

8    HSBC about their credit card account.  Robin Decl. Ex. D.[15]  Roughly 11% of the

9    Non-Direct Payment Class Members, or 183,430 individuals, filed claims forms.

10   Robin Decl. ¶19.  This is a far greater percentage than is typical in a consumer

11   protection case.

12              **6.    Class Counsel's Request for One-Third of the Common Fund**

13                      **in Attorneys' Fees Is Reasonable and Non-Collusive.**

14            The amount requested in attorneys' fees should be irrelevant to the Court's

15   evaluation of the fairness of the Settlement.  Nothing about the fee request suggests

16   that the parties' counsel colluded to increase attorneys' fees at the expense of the

17   class recovery.  If the Court reduces the attorneys' fees, that amount will be paid to

18   the class and will not revert to defendant.  SA ¶¶3.3.A, 3.9.  The Settlement

19   _____

20   [14] The Settlement is a significant improvement over the original *Medeiros* settlement
     because it uses the autodialer log data obtained in discovery to eliminate from the
21   potential class list telephone calls that could not have been recorded, based on the
     result code.  SA ¶2.31(c).
22

23   [15] The claim form proposed in the *Medeiros* settlement was substantially modified,
     and limited to requesting only the bare minimum information needed to confirm
24   Class Member status.  The original *Medeiros* claim form required Class Members to
     recall the telephone number at which they had been called and to recall and affirm
25   that they were not advised that their call might be recorded.  ECF No. 20-4.  The
     *Fanning/Lindgren* plaintiffs objected to the complexity of the *Medeiros* claim form
26   because HSBC has records of the telephone numbers called and admitted that it did
27   not verbally notify individuals that their call might be recorded.  ECF No. 49, at 24.

28

1    specifically provides that "Court approval of the requested attorneys' fees, or their
2    respective amounts, shall not be a condition of the Settlement."  SA ¶3.9.

3         Objector concedes that there is no clear-sailing provision here.  ECF No. 95, at
4    11.  The Settlement explicitly *limits* Class Counsel to seeking no more than one-third
5    of the common fund in attorneys' fees, but does not guarantee Class Counsel any
6    amount.  SA ¶3.9.  Where, as here, class counsel seeks fees as a straight percentage
7    of the common fund, their efforts to increase the common fund benefit the class to
8    the same extent as themselves, and there is consequently far less danger of collusion.
9    *Cf. In re Bluetooth Headset Products Liability Litig.*, 654 F.3d at 947  (signs of
10   collusion present where "parties negotiate a 'clear sailing' arrangement providing for
11   the payment of attorneys' fees separate and apart from class funds, which carries 'the
12   potential of enabling a defendant to pay class counsel excessive fees and costs in
13   exchange for counsel accepting an unfair settlement on behalf of the class'" and
14   "when the parties arrange for fees not awarded to revert to defendants rather than be
15   added to the class fund") (citation omitted).

16        There is no merit to Objector's suggestion that the fee provisions indicate
17   collusion because the parties allegedly "agreed to fees in excess of the prior
18   arrangement (33% versus 25%)."  ECF No. 95, at 11.  The *Medeiros* settlement
19   included a clear sailing arrangement under which defendant agreed not to object to a
20   fee request of up to 25%, without placing any limit on what counsel could request.
21   ECF No. 20-3 ¶3.9.  The current Settlement, by contrast, *limits* fees to 33 1/3%, and
22   has no clear sailing language.  SA ¶3.9.

23        The *Fanning/Lindgren* plaintiffs originally objected that 25% of the common
24   fund was excessive in the *Medeiros* case because that case was in its infancy, with a
25   correspondingly low lodestar.  ECF No. 49, at 13.  Here, one-third of the common
26   fund is the equivalent of a modest 1.13 multiplier on Class Counsel's lodestar
27   through May 2017, with counsel's lodestar continuing to mount.  That is far from

28

excessive considering the enormous efforts counsel devoted to this successful case, including the numerous discovery battles and expensive expert analysis needed to obtain the data and correctly identify Class Members, the extensive motion practice (including the summary judgment briefing on burden shifting for plaintiff Fanning that plaintiffs argued should be applied to all Class Members, including those for whom there is no proof of recording), and the motion to intervene and subsequent rounds of mediation through which all Class Counsel, working together, improved the *Medeiros* settlement both substantively and monetarily.  *Supra* Section II.[16] Notably, Objector does not dispute the many hours put in by Class Counsel over the course of now five years.[17]  Indeed, were the Court to heed Objector's request that fees be reduced to 25% of the common fund, Class Counsel would receive much less than their collective lodestar through May 2017.  *See* ECF No. 94-2 ¶47.  For the reasons explained above, the monetary value of the Settlement represents an excellent result given the significant risks facing the class, *supra* Section III.C, and certainly does not justify any negative reduction in the fees award.

### 7.    Class Counsel's Fee Split Is Reasonable.

Finally, Objector relies upon Second and Fifth Circuit cases to argue that the

---

[16] Objector misleadingly implies that the *Medeiros* settlement contemplated $1.6 million in attorneys' fees and "between $4.5 and $6.5 million to the class."  ECF No. 95, at 12.  The *Medeiros* settlement would not have conveyed $4.5 to $6.5 "to the class" – those are gross settlement numbers, including any fees award.  Likewise, this Settlement has a gross value of $13 million – not $7.6 million, as Objector implies.

[17] Objector's only complaint about plaintiffs' lodestar is that the 2017 rates for two accomplished partners at Altshuler Berzon LLP are higher than the rates discussed in one 2015 case.  ECF No. 95, at 14.  But those rates are more than justified given the partners' experience and accomplishments.  ECF No. 94-2 ¶¶6-8, 15. Multiple courts have approved Altshuler Berzon's 2017 rates, including those of senior partners Michael Rubin and Jeffrey Demain, and Altshuler Berzon has charged its paying commercial clients its 2017 senior partner rates.  *Id.* ¶43; Cervantez Decl. ¶8.

24

1    Court "must allocate the attorneys' fees among the various firms rather than simply

2    award a lump sum and trust that [Class Counsel] will do so fairly." ECF No. 95, at

3    16. The Ninth Circuit has no such rule; although courts *may* allocate fees among co-

4    counsel, they are not required to do so. *See, e.g., In re FPI/Agretech Sec. Litig.*, 105

5    F.3d 469, 473 (9th Cir. 1997); *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-

6    04766-JSW, 2017 WL 3616638, at *10 (N.D. Cal. June 26, 2017), *objections*

7    *overruled,* No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017).

8        Further, there is nothing collusive or wrong with Class Counsel's division of

9    fees amongst themselves, and no reason for this Court to intervene. After

10   negotiating the Settlement, counsel for the *Medeiros* plaintiffs and counsel for

11   *Fanning/Lindgren* plaintiffs mediated the division of any attorneys' fees that might

12   be awarded as a result of the combined Settlement Agreement with the assistance of

13   Judge Infante. Cervantez Decl. ¶7. Class Counsel jointly agreed that counsel for

14   *Medeiros* plaintiffs would receive 8% of all fees awarded, and counsel for

15   *Fanning/Lindgren* plaintiffs would receive the rest. *Id.* The three law firms

16   representing the *Medeiros* plaintiffs had previously agreed to divide their fees

17   equally among their three firms. *Id.* ¶6. The four law firms representing the

18   *Fanning/Lindgren* plaintiffs had previously agreed to divide their fees 35% to

19   Altshuler Berzon; 30% to Bailey & Galyen; 20% to the Arleo Law Firm, and 15% to

20   the Mehdi Law Firm. *Id.* ¶5.

21   **IV.   CONCLUSION**

22       For the foregoing reasons, the Objection should be overruled, and the Court

23   should finally approve the Settlement as fair, reasonable, and adequate.

24   Dated:  September 18, 2017          Respectfully submitted,

25                                       By:    /s/ Eve H. Cervantez
                                                Eve H. Cervantez
26
                                         MICHAEL RUBIN
27                                       EVE CERVANTEZ
                                         P. CASEY PITTS
28

1

2

3

4

Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
(415) 421-7151
(415) 362-8064 (fax)
mrubin@altber.com
ecervantez@altber.com
cpitts@altber.com

5

6

7

8

ELIZABETH J. ARLEO
Arleo Law Firm, PLC
16870 West Bernardo Drive, Ste 400
San Diego, CA 92127
(858) 674-6912
(760) 789-8081 (fax)
elizabeth@arleolaw.com

9

10

11

12

13

AZRA Z. MEHDI
The Mehdi Firm, PC
One Market
Spear Tower, Suite 3600
San Francisco, CA  94105
(415) 293-8039
(415) 293 8001 (fax)
azram@themehdifirm.com

14

15

16

17

STEPHEN C. MAXWELL (admitted phv)
BAILEY & GALYEN
1300 Summit Avenue, Ste. 650
Fort Worth, Texas 76102
(817) 417-9660
(817) 719-9484 (fax)
smaxwell@maxlawyers.com
rturner@galyen.com

18

19

*Attorneys for Plaintiffs Terry J. Fanning,*
*Tatiana Jabbar, and Stefan O. Lindgren*

20

By:    /s/ David J. McGlothlin
             David J. McGlothlin

21

22

23

24

25

JOSHUA B. SWIGART
DAVID J. MCGLOTHLIN
Hyde & Swigart
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
josh@westcoastlitigation.com
david@westcoastlitigation.com

26

27

ABBAS KAZEROUNIAN
Kazerouni Law Group, APC
245 Fischer Avenue, Unit D1

28

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
E-mail: ak@kazlg.com

TODD M. FRIEDMAN
Law Offices of Todd M. Friedman, P.C.
324 South Beverly Blvd., Suite 725
Beverly Hills, CA 90211
Telephone: (877) 206-4741
tfriedman@attorneysforconsumers.com

*Attorneys for Plaintiffs Gail Medeiros, Tracy T. Bomberger, Peter Morrissey, and Julie Pulatie*

PLAINITTFS' MPA ISO MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NOS. 2:15-cv-09093-JVS (AFMx), 12-CV-00885-JVS-RNB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION

In accordance with Local Rule 5-4.3.4, I hereby attest that concurrence in and authorization of the filing of this MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL has been obtained from David J. McGlothlin, counsel for plaintiffs Gail Medeiros, Tracy T. Bomberger, Peter Morrissey, and Julie Pulatie. I shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

Dated:  September 18, 2017              By:     /s/ Eve H. Cervantez
                                                Eve H. Cervantez